Dear Mr. Ryals:
You have requested the opinion of this office regarding legal implications of the proposed issuance by the Health Education Authority of Louisiana (HEAL or the "Authority") of Taxable Parking Revenue Bonds not to exceed $10,000,000 (the "Bonds") for the purpose of financing an addition (the "Project") to HEAL's existing parking garage located at 300 LaSalle Street in New Orleans. The parking garage will be for the use of employees and students of the Tulane Medical Center, visitors to HEAL's multi-institutional complex and the public.
The State of Louisiana owns the property upon which HEAL's existing multi-level parking garage has been built. This land is leased by the State to HEAL under a ground lease which expires February 14, 2002. HEAL entered into a Lease-Operating Agreement, now assigned to APCOA, which will expire on December 31, 1997. It is proposed that the State will enter into a new Ground Lease with HEAL to encompass additional land necessary for an expanded parking facility and that lease will be extended to a date coterminous with the date of an Extended Lease-Operating Agreement between HEAL and APCOA which will be extended to a date not later than one year following the final maturity date of the Bonds.
In connection with these proposed transactions, you have identified the following legal issues:
1. If the Project will be owned by APCOA, the lessee of the existing parking garage during the term of the extended lease, and if the project will be constructed on a turnkey basis at the sole risk, cost and expense of APCOA, must the project be included in a comprehensive capital budget of the State?
2. May the Project, which will not be a public work, but will be owned by APCOA during the term of the Extended Lease, be constructed on a turnkey basis at the direction of APCOA without public bidding of the construction?
3. Pursuant to R.S. 17:3055 and 3055.1, may the extension of the Ground Lease between the State of Louisiana and HEAL and the execution of the Extended Lease between APCOA and HEAL and the sublease of parking spaces by HEAL to Tulane pursuant to the Contract Parking Agreement be accomplished without the public bidding of such leases?
4. Since the Bonds are revenue bonds secured by and payable solely from the revenues to be derived by HEAL from the Contract Parking Agreement, the Project and APCOA rentals under the Extended Lease, are the debt limit provisions of Article VII, Section 6(F) and of La. R.S. 39:1367 applicable to the Bonds or to any other above described agreements in connection with this transaction?
A. Capital Budget
You have indicated that the Project will be constructed with funds provided by APCOA and will be owned by APCOA until the expiration of the Ground Lease of the State property to HEAL and of the Extended Lease. Pursuant to the terms of the Extended Lease, APCOA, as lessee of the existing HEAL parking garage and owner of the Project, will operate the existing HEAL garage and the expansion which occurs as a result of the Project as a single integrated facility. You have further stated that the term of the Ground Lease will be extended to a date not later than one year following the final maturity of the Bonds.
The purpose of the capital outlay budget is to appropriate state funds for the construction of capital projects. Responding to your first question, it is our opinion that since the Project will be built by, paid for by and owned by APCOA rather than HEAL, the Project need not be included in the capital budget of the State.
B. Public Bidding of Construction
R.S. 38:2212A(1)(a) requires that, "All `public work' . . . to be paid out of `public funds', to be done by a `publicentity' shall be advertised and let by contract to the lowest responsible bidder . . .". Opinion Number 96-440 of this office concluded that, "It is clear from the statutes and cases that the Public Bid law applies only if a `public entity' contracts for the construction of `public works' on `public property' using `public funds'."
The series of transactions outlined in your request indicates that neither HEAL nor the State will enter into contracts for construction of parking garage, and HEAL will not own the Project after construction. The funds utilized for the construction of the
Project will be funds in the hands of APCOA, although those funds originate as the proceeds of the Bonds to be issued by HEAL and paid to APCOA for its erection and operation of the Project. Under these circumstances it is the opinion of this office that the Public Bid Law is not applicable to the construction of the Project.
The series of transactions outlined in your request indicates that neither HEAL nor the State will enter into contracts for construction of parking garage, and HEAL will not own the Project after construction. The funds utilized for the construction of the Project will be funds in the hands of APCOA, although those funds originate as the proceeds of the Bonds to be issued by HEAL and paid to APCOA for its erection and operation of the Project. Under these circumstances it is the opinion of this office that the Public Bid Law is not applicable to the construction of the Project.
Additionally, since HEAL is acting solely as a conduit issuer of the Bonds, the debt service for which is to be paid solely from revenues to be derived from: the Contract Parking Agreement, the Project, and APCOA rentals under the Extended Lease; therefore, the bond proceeds used by APCOA for the construction of the Project which will be owned by APCOA are not "public funds". In this regard, this transaction is similar to conduit issues by port authorities and other entities such as LHFA and the LAFA.
C. Procedure for Leasing
R.S. 17:3055 and 3055.1, which are part of the Act which created HEAL, provide ample authority for both the lease of the State-owned site to HEAL and the sublease by HEAL of the property to APCOA under the proposed Extended Lease without public bidding of such leases. Relevant provisions of those statutes are excerpted as follows:
R.S. 17:3055. To accomplish the purposes of this Act, . . . the . . . Authority . . . shall have the following powers, duties and functions . . . . (4) To make contracts of every nature and to execute all instruments necessary or convenient for the carrying out of its business . . . (6) To acquire real and personal property by lease, purchase, donation or otherwise, including, but not limited to, the following: land . . . and any other things of value . . . . (7) To own, hold, sell, mortgage, convey, lease, rent, alienate and otherwise manage, contract with reference to or dispose of, all or any part of its property, real or personal, or services, on any terms and conditions as may be lawful and consistent with the provisions and objectives of this Act . . . . (10) To construct, acquire, reconstruct, rehabilitate, improve, repair, operate, lease, as lessor or lessee, or to enter into contracts for the management and operation of hospitals . . . or any other facility . . . . The authority may construct, acquire, reconstruct, rehabilitate, improve, repair, operate, lease, as lessor or lessee, or enter into contracts for the management and operation of support facilities . . . including but not limited to: parking facilities . . . .
R.S. 17:3055.1. The . . . Authority is authorized to lease to or from the State of Louisiana or any political subdivision or agency thereof . . . for medical and health education and auxiliary purposes, including parking, any public lands and improvements thereon in the manner provided by Part III of Title 41 of the Louisiana Revised Statutes . . . . In order to assist the authority in carrying out its functions, duties and responsibilities, the State of Louisiana is authorized to lease lands and improvements owned by it to the authority, for medical and health education and auxiliary purposes, including parking . . . .
The Title 41 provisions referenced above authorize leases between political subdivisions and state agencies and establish requirements for such agreements. The language of R.S. 17:3055
(7) which authorizes the Authority to lease its property, "on any terms and conditions as may be lawful . . ." indicates clearly that the Authority is given broad discretion and that this grant of authority is not subject to the provisions beginning at R.S.41:1211 which require public bidding for the lease of public lands.
D. Revenue Bonds as State Debt
Opinion Number 94-452 of this office addressed the status of revenue bonds as state debt and concluded, under the applicable provisions of Louisiana Constitution Article VII, Section 6, that revenue bonds which do not bear the full faith and credit of the State do not constitute State debt. Since the Bonds to be issued by the Authority are to be secured by and payable solely from the revenues to be derived from the Contract Parking Agreement and the rentals payable by the developer under the Extended Lease, it is our opinion that such Bonds qualify as revenue bonds as described in Article VII, Section 6[C], do not constitute state debt, and need not be considered in the computation of state debt mandated by Article VII, Section 6 (F).
As described above, the proposed Bonds do not fall within the definition of "net state tax supported debt" as set forth in R.S. 39:1367 and therefore are not subject to the limitations of that statute.
I trust that this answers your inquiry. Please advise if we may be of further assistance to you in this matter.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ______________________________ GLENN R. DUCOTE
Assistant Attorney General
RPI/GRD/cla